**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JENNIFER KOTT,<br>    Plaintiff,<br>v.<br>AGILENT TECHNOLOGIES, INC. DISABILITY PLAN,<br>    Defendant. | Case No. 16-cv-03678-BLF<br><br>**ORDER DENYING PLAINTIFF'S MOTION AND GRANTING DEFENDANT'S CROSS MOTION FOR JUDGMENT**<br><br>[Re: ECF 29] |

Plaintiff Jennifer Kott ("Kott") challenges the denial of her disability claim by Sedgwick Claims Management Services, Inc. ("Sedgwick") under the Agilent Technologies, Inc. Disability Plan (the "Plan"), an employee benefits plan governed by ERISA.[1] Kott sought disability claims because of back pain and severe plantar fasciitis in her foot. Sedgwick, as the administrator of the Plan, initially granted 52 weeks of benefits under the "own occupation standard." Ex. 2 to Pl. Mot. at 987. However, Sedgwick denied Kott's claims of disability under the "any occupation" standard so the benefits did not continue past February 2016 after 52 weeks. Ex. 7 to Pl. Mot at 321-23.

The parties have filed cross motions for judgment pursuant to Federal Rule of Civil Procedure 52. Kott seeks a determination that she was disabled under the "any occupation" standard and Defendant seeks a contrary determination. The Court set a "Hearing on Dispositive Motions/Bench Trial" for June 15, 2017 and heard extensive oral argument of counsel on that date. For the reasons discussed below, the Court DENIES Kott's Rule 52 motion, issues Findings of Fact and Conclusions of Law under Rule 52, and GRANTS Defendant's motion.

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 52 provides that "[i]n an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). "In a Rule 52 motion, as opposed to a Rule 56 motion for summary judgment, the court does not determine whether there is an issue of material fact, but actually decides whether the plaintiff is [entitled to benefits] under the policy." *Prado v. Allied Domecq Spirits and Wine Group Disability Income Policy*, 800 F. Supp. 2d 1077, 1094 (N.D. Cal. 2011) (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999)). In making that determination, the court must "evaluate the persuasiveness of conflicting testimony and decide which is more likely true" in order to make findings of fact that will be subject to review under a clearly erroneous standard if appealed. *Kearney*, 175 F.3d at 1095.

Where an ERISA plan confers discretionary authority upon a plan administrator to determine eligibility for benefits, the administrator's decision to deny benefits is reviewed for abuse of discretion. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Nolan v. Heald College*, 551 F.3d 1148, 1153 (9th Cir. 2009). Under a straightforward application of the abuse of discretion standard, "the plan administrator's decision can be upheld if it is grounded in *any* reasonable basis." *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009) (internal quotation marks and citation omitted) (emphasis in original).

Here, the parties do not dispute that the Plan grants discretionary authority to decide claims and appeals to Sedgwick. Pl. Mot. ("Mot.") 14, ECF 29; Def. Cross-Mot., Opp'n 10 ("Opp'n"), ECF 30. The Court thus will apply an abuse of discretion standard of review. *See Firestone*, 489 U.S. at 110-111. Under this standard of review, the plan administrator's decision will be upheld if it is reasonable, but the plan administrator should be found to have abused its discretion if its decision is "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011).

## II. EVIDENTIARY ISSUES

Kott submitted documents outside the administrative record, including Exhibits 13, 16, and

17 for the Court's consideration. Mot. 6, 13-14. The parties do not dispute that these exhibits are not in the administrative record and that they are dated in March 2017, far beyond the April 26, 2016 date of Sedgwick's denial of Kott's appeal. Mot. 6 n.2; Opp'n 10. However, Kott contends that that she is entitled to submit evidence outside of the record because of "procedural irregularity" that affected the administrative review. Mot.6 n.2; Reply 10 n.3. Defendant objects to the introduction of these exhibits because they were not before Sedgwick when it denied Kott's claims. Opp'n 10-13.

With respect to Exhibit 13, this exhibit includes a letter from Dr. Justin Low and an event and appointment log, purportedly showing that Dr. Low has never had any communications with any care managers, lawyers or administrators regarding Kott's care or management, which is contrary to evidence relied on by Sedgwick in its final denial letter. Ex. 13 to Mot. Kott claims that this exhibit should be considered because Sedgwick relied on a conversation between Dr. Low and Dr. Mardy-Davis for the first time on appeal in the denial letter. *Id.*; Mot. 6 n.2. Defendant argues that regardless of whether the telephone call occurred, it had no impact on the rationale set forth in the denial letter. *Id.* at 11-12.

"When determining whether the [plan administrator] abused its discretion, the Court's review is limited to the administrative record." *Cuevas v. Peace Officers Research Ass'n of Cal. Legal Def. Fund*, No. 14-02540-BLF, 2016 WL 2754434, at *8 (N.D. Cal. May 12, 2016) (citing *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006)). "[I]n general, a district court may review only the administrative record when considering whether the plan administrator abused its discretion. . . ." *Abatie*, 458 F.3d at 970. The "administrative record consists of the papers the [plan administrator] had when it denied the claim." *Kearney*, 175 F.3d at 1096. "The court may not consider information outside the administrative record, as it would be improper to find a claims administrator abused its discretion based on evidence not before it at the time the decision was made." *Thompson v. Ins. & Benefits Trust/Comm. Peace Officers Research Ass'n of California*, 670 F. Supp. 2d 1052, 1068 (E.D. Cal. 2009).

Given that the Court is applying the abuse of discretion standard here, evidence extraneous to the record before Sedgwick, such as Exhibit 13, cannot be considered here. These exhibits were

3

not before Sedgwick when it denied Kott's disability claim and are not part of the record. Relying on *Abatie*, Kott attempts to characterize Sedgwick's denial letter's reference of the phone call between Dr. Low and Dr. Mardy-Davis as a procedural error. Kott then argues that this procedural error supports consideration of evidence extraneous to the record. However, this mere reference in the denial letter is not the type of procedural error that warrants the introduction of outside evidence in accordance with the holding in *Abatie*. In *Abatie*, an insurer denied life insurance benefits to plaintiff because the decedent had not filed a waiver of premium application (based on disability) and had not paid his premiums, and coverage lapsed before the decedent died. *Abatie*, 458 F.3d at 960. In the initial denial, the denial of coverage was based on insufficient evidence showing a waiver. *Id*. at 961. When the subsequent appeal was denied, the insurer – for the first time on an administrative appeal – added a second reason: that "it was denying coverage because there was insufficient evidence in the record that [the decedent] had remained totally disabled from the time he left work until his death." *Id*. The Ninth Circuit in *Abatie* noted that an "administrator's last minute reliance on a new ground for denial of benefits, [] afforded [the plaintiff] no opportunity to present relevant evidence in advance of the administrator's final decision." *Id*. at 971. As such, the court held that under such circumstances, the trial court "may take additional evidence" because "the irregularities have prevented full development of the administrative record." *Id*. at 973.

*Abatie* is not analogous to the situation here. A review of the final denial letter reveals that the denial was based on the review of medical records and the summaries of all the independent reviewers and a vocational specialist. The mere mention of a teleconference between Dr. Mardy-Davis and Dr. Low does not present a novel ground in support of the denial. As such, Defendant's objection to Exhibit 13 is sustained.

Similarly, the Court will not consider Exhibits 16 and 17 as they were not before Sedgwick when it denied her disability claim and are not part of the record. Exhibit 16 is another letter by Dr. Low, providing an update with regard to Kott's current functional status due to her back and foot conditions. Ex. 16 to Mot. Exhibit 17 includes a medical record pertaining Kott's current health status regarding diagnosis and treatment for breast cancer. Ex. 17 to Mot. Kott offers these

4

exhibits as information that Sedwick must consider on remand. Mot. 13-14. For the same reason the Court sustains Defendant's objection to Exhibit 13, the objections to Exhibits 16 and 17 are also sustained.

## III. FINDINGS OF FACT

### A. Background

Kott worked as an Import Compliance Specialist at Agilent Technologies, Inc. up to the date of disability, February 11, 2015. AR 150, 570-74. Kott holds a Customhouse Broker's License, is certified as an export specialist, and has 8 or more years of "general education, college, seminars, and on the job training." AR 148.

At all relevant times, Kott was a participant in the Agilent Technologies, Inc. Disability Plan (the "Plan"), which is a self-funded disability plan (*i.e.* benefits are funded by Agilent Technologies, Inc. ("Agilent"), not through an insurer). ERISA § (1)(A), 29 U.S.C. § 1002(1)(A).

Under the terms of the Plan, a participant qualifies as "Totally Disabled" if:

> During the first fifty-two (52) weeks following the onset of the injury or sickness, the Member is continuously unable to perform each and every duty of his or her Usual Occupation; and
>
> After the initial fifty-two (52) week period, the Member is continuously unable to perform any occupation for which he or she is or may become qualified by reason of his or her education, training or experience. . . .
>
> The determination of Total Disability shall be made by the Claims Administrator on the basis of objective medical evidence. "Objective medical evidence" shall mean that evidence establishing facts or conditions as perceived without distortion by personal feelings, prejudices or interpretations.

AR 8-9.[2]

Kott has suffered three coccygeal (tailbone) fractures, the most recent of which occurred in August 2014 when she slipped and fell on a cement floor in her home. AR 153-58. Kott was treated for her chronic coccyx pain with up to four coccygeal epidural injections, and when the injections no longer worked, with codeine. AR 153-58. According to her medical records, at the time of Sedgwick's final decision, Kott suffered from panic disorder, pre-diabetes, insomnia, and

---

[2] Citations to the administrative record that Agilent lodged with the Court on April 14, 2017 with the Declaration of Michael Tang, ECF 27, are noted as "AR" followed by the numeric portion of the Bates numbered document.

5

premature ventricular beats, and testing revealed the presence of multiple pulmonary nodules. AR 170.

### B. Initial Fifty-Two Week Period: Plaintiff's "Own Occupation" Disability Claim

Agilent Technologies, Inc. ("Agilent") is the company sponsor of the Plan and Sedgwick CMS ("Sedgwick") is the claims administrator of the Plan. AR 6. On February 16, 2015, Sedgwick sent a letter acknowledging receipt of Kott's disability claim. AR 629-38. In support of Kott's claim for disability, Dr. Raymond Lai provided an "attending physician statement," dated February 27, 2015, identifying Kott's disabling condition as chronic coccyx pain and recommended "modifying duty" and that Kott "occasionally sit[s]" through June 5, 2015. AR 640. Sedgwick later determined that Kott was unable to perform her "own" occupation in a letter dated March 10, 2015. AR 648-49. Sedgwick then approved Kott's disability claim under the Plan's initial 52-week "own occupation" period, effective February 18, 2015 (after the required seven-day waiting period), finding that Kott's injury prevented her from performing her occupation due to restrictions on her ability to sit for extended periods of time. *Id*. Kott's "own occupation" disability claim was re-approved on a monthly basis throughout the entire initial 52-week period, and Kott received a total of $66,150.88 in benefits. AR 1255.

As one of Kott's treating physicians, Dr. Lai reported in March 19, 2015, that Kott suffered from chronic coccyx pain that restricted her ability to sit for long periods of time, thereby preventing her from performing all of the duties of her occupation. AR 153-58. Dr. Lai determined that Plaintiff could sit up to 25% of her shift, no more than 20 hours per week, and that she must not sit in one position for more than 15 minutes at a time. *Id*. During this initial 52-week "own occupation" disability period, Agilent offered to accommodate Kott's disability so she could return to work, including providing a sit/stand desk and allowing her to attend medical appointments. AR 1209-10.

In a letter dated September 18, 2015, Network Medical Review Company ("NMR") informed Kott that Sedgwick requested that she undergo an independent medical examination ("IME"). AR 759. Dr. Lakshmi Madireddi of NMR performed the IME on October 5, 2015. AR 153-58. Dr. Madireddi's IME report noted that Kott had been treated for chronic coccyx pain by

receiving four coccygeal epidural injections, and that she continued to have issues with prolonged sitting. *Id*. At the IME, Kott was uncooperative and prevented a complete examination by Dr. Madireddi by refusing to complete certain forms during the IME, and she did not participate in a "straight leg raising" exercise because she refused to sit or lie down as required by the exercise. *Id.* at 155-56. The coccygeal examination could not be performed because Plaintiff refused to remove her clothing and get into a hospital gown. *Id.* at 156. The IME report also noted that Kott suffered from pain in her caudal region, and occasionally in her left buttock. *Id*. Dr. Madireddi concluded that a diagnosis of coccygeal strain was supported by the IME, and pain treatment was proper. *Id*. Dr. Madireddi further opined that on a scale of one to ten (with one being not severe and ten being severe), Kott's condition was a 5 out of 10 in severity. *Id.* at 157. Dr. Madireddi further stated that Kott could perform part-time work up to 20 hours per week without accommodation, and that Kott could return to full-time work within six months with accommodation (workstation where she could sit and stand). *Id*.

In October 20, 2015, Kott's treating physician, Dr. Justin Low, agreed with Dr. Madireddi's assessment by signing a document instructing him: "The IME opinioned [sic] that Ms. Kott could return to work with restrictions and limitations noted below. If you agree that Ms. Kott could return to work on November 1, 2015 with these restrictions, please date and sign this letter below." AR 777. The restrictions and limitations that Dr. Low agreed with on October 20, 2015 included the following: "work 4 hours a day and 20 hours a week; stand 6-8 hours cumulative; sit for 20 minutes at a time, with a break for 10 minutes to stand up; should be able to lift 20 pounds occasionally, 10 pounds frequently; can occasionally stoop and climb steps. Duration of these restrictions will be 6 months." *Id*. Dr. Low later amended his findings by letter received on October 28, 2015 to reduce Kott's per-day working capacity to 2-3 hours, instead of 4. AR 783.

Medical records dated October 8, 2015, and February 29, 2016, indicate that Kott also suffered from left plantar fasciitis (heel pain in her left foot). AR 793-97; AR 398. There was no evidence of fracture or dislocation, as Kott's bone mineralization was shown to be normal and no soft tissue abnormality was detected. *Id.* at 797. The medical opinion as of October 8, 2015 was

7

that Kott's chronic coccyx pain required her to stand for long periods of time, which placed increased weight on her feet causing an issue in her left heel. AR 793-97. As of October 11, 2015, podiatric surgeon Dr. Gian Hong Duc Son stated that Kott's treatment would include an injection and a boot for her left foot. AR 806.

### C. After the Initial Fifty-Two Week Period: Kott's "Any Occupation" Disability Claim

After 270 days of receiving "own occupation" disability benefits, the Plan required that Kott's claim be analyzed under its "any occupation" disability definition, should Kott seek benefits after the initial 52-week disability period. AR 842. Kott sought disability benefits under the Plan's "any occupation" definition after the initial 52-week disability period in November 2015. In support of her "any occupation" disability claim, Kott completed a questionnaire in which she noted chronic coccyx pain and left plantar fasciitis as the medical basis for her disability claim. AR 141-49. In her application for benefits, Kott claimed that chronic coccyx pain and left plantar fasciitis prevented her from prolonged sitting or standing, commuting over long distances, and concentrating. AR 141-49. As part of her submission, Dr. Low's November 2015 treating physician's statement noted Kott's coccyx injury, plantar fasciitis, and treatment with epidural injection. AR 151-52. In the same statement, Dr. Low expects a "fundamental or marked change" in the future in regard to prognosis and concluded that Kott would be sufficiently recovered to return to work at her job and in any occupation in 3 to 6 months. *Id*.

In a letter dated January 5, 2016, Sedgwick informed Kott that it denied her disability claim under the "any occupation" definition of disability. AR 321-23. Sedgwick's denial was based on the medical records of Drs. Lai, Low, and Son, and an independent review of Kott's medical file performed by Dr. Heidi Klingbeil (Board Certified in Physical Medicine, Rehabilitation, and Pain Medication). AR 321-23. Dr. Klingbeil acknowledged that Kott suffered from coccyx pain and plantar fasciitis, but concluded that these conditions did not prevent Kott from performing any occupation. AR 314-17. Kott's disability benefits were denied effective February 10, 2016, under the any occupation, total disability standard. AR 321-23.

On January 8, 2016, Kott formally appealed Sedgwick's denial, and requested copies of all

medical records that Sedgwick reviewed in making its determination. AR 324. Kott sent another letter to Sedgwick, dated March 21, 2016, to provide additional medical documentation that she claimed supported her "any occupation" disability claim. AR 365-368. In this letter, Kott argued that the records submitted to Dr. Klingbeil, upon which Sedgwick based its January 5, 2016 denial letter, were incomplete. *Id*. Kott also took issue with the IME, referring to the facility as "shabby" and "rundown." *Id*. Kott further explained that she could not sit due to the coccyx pain, and could not stand due to the left plantar fasciitis, and was therefore unable to perform any occupation. *Id*.

### D. Sedgwick Upheld its Disability Determination

In a letter dated April 26, 2016, Sedgwick informed Kott that the denial of her disability claim was upheld. AR 590-92. In this letter, Sedgwick referenced two additional peer review reports completed by Dr. Woodley Mardy-Davis (Board Certified in Pain Medicine) and Dr. Martin Taubman (Board Certified in Podiatry). *Id*. Based on his review of Kott's medical records (including the IME report) and Kott's reports of chronic pain, Dr. Mardy-Davis concluded that clinical findings did not support Kott's inability to work. AR 338-41. Like Dr. Klingbeil, Dr. Mardy-Davis concluded that Kott could perform her own occupation, let alone any occupation for which she was qualified. *Id*. Dr. Taubman concluded that, although Kott's plantar fasciitis required that she perform limited work between February 10, 2016, and March 1, 2016, no restrictions applied thereafter. AR 343-47. Dr. Taubman based his conclusion on the medical evidence that was before Drs. Klingbeil and Mardy-Davis. He also noted that Dr. Son, who treated Kott for her plantar fasciitis, "did not include foot specific findings that would support inability to perform [Kott's] regular job functions." *Id*. at 346.

As such, Sedgwick concluded that, "[f]rom a podiatry and pain medicine perspective, the medical documentation contained no substantive physical clinical findings or abnormalities to support [Kott's] inability to perform any occupation as of February 10, 2016." AR 591.

Sedgwick also referred Kott's claim for a transferrable skills analysis, to determine what, if any, other occupations Kott could perform despite her medical issues. AR 572-74. The analysis was based on Kott's capacity to work, job skills, educational background, and the labor market

9

conditions in her geographic area. *Id*. The analysis concluded that other jobs were available to Kott in the geographic marketplace that would provide sufficient earning capacity, including: (1) Contract Administrator: $44.34 per hour; (2) Import Export Agent: $36.62 per hour; and (3) Program Manager: $44.89 per hour. *Id*.

### E. Determination of the Social Security Administration

As set forth in a letter dated May 27, 2016, the Social Security Administration ("SSA") denied Kott's claim for Social Security disability benefits. AR 832-35. The SSA informed Kott that, "[b]ased on a review of your health problems you do not qualify for benefits on this claim . . . because you are not disabled under our rules." *Id*. at 832. The SSA explained,

> We have determined that your condition is not severe enough to keep you from working. We considered the medical and other information, your age, education, training, and work experience in determining how your condition affects your ability to work. Your condition results in some limitations in your ability to perform work related activities. However, these limitations do not prevent you from performing work you have done in the past as an REDACTED as you describe. We have determined that your condition is not severe enough to keep you from working. We considered the medical and other information and work experience in determining how your condition affects your ability to work.

*Id.* at 832-33.

The SSA applies a standard different from the "any occupation" standard under the Plan, which is whether Kott is unable to perform "substantial work." *Id*. at 833. The SSA found that Kott's medical conditions, although present, did not render her totally disabled. *Id.* at 832-33.

## IV. CONCLUSIONS OF LAW

Kott brings this action pursuant to ERISA's civil enforcement provisions. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Kott's complaint states a single claim for relief for payment of benefits under the Plan. ECF 1; ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). As noted above, "[u]nder a straightforward application of the abuse of discretion standard of review, the plan administrator's decision can be upheld if it is grounded in *any* reasonable basis." *Cuevas*, 2016 WL 2754434, at *4 (quoting *Montour v. Hartford Life & Acc. Ins. Co*., 588 F.3d 623, 629 (9th Cir. 2009)) (internal quotation marks omitted) (emphasis in original). For reasons

1  set forth below, the record does not support the conclusion that Sedgwick rendered its decision
2  "without any explanation, construed provisions of the [P]lan in a way that conflicts with the plain
3  language of the [P]lan, fail[ed] to develop necessary facts for its determination," or relied on
4  "clearly erroneous findings of fact in making benefit determinations." *Pac. Shores Hosp. v.*
5  *United Behavioral Health*, 764 F.3d 1030, 1042 (9th Cir. 2014) (citations omitted).

Sedgwick's decision to deny Kott's disability claim was based on the findings of: (1) three board-certified medical practitioners, Dr. Heidi Klingbeil (Board Certified in Physical Medicine, Rehabilitation, and Pain Medication), Dr. Woodley Mardy-Davis (Board Certified in Pain Medicine), and Dr. Martin Taubman (Board Certified in Podiatry), AR 321-23; 590-92; (2) an independent medical examiner, Dr. Lakshmi Madireddi, AR 153-58; (3) Kott's treating physicians, including Dr. Justin Low, who authored the treating physician's statements that Kott submitted with her disability claims, AR 151, 777; and (4) a vocational expert who reviewed Kott's medical file and capacity to work, and determined that Kott could perform any occupation, AR 570-74.

Sedgwick's initial denial letter states that although a medical condition may exist, Kott was required to present evidence of disability that entitled her to benefits under the "any occupation" standard, which she had not done. AR 321-23. Likewise, Sedgwick's April 26, 2016 final determination letter again recited the definition of total disability under the Plan's "any occupation" standard and addressed Kott's failure to demonstrate total disability based on the effects of her chronic coccyx pain and left plantar fasciitis. AR 590-91.

Specifically, Sedgwick's April 2016 letter referenced two peer review reports authored by Drs. Mardy-Davis and Taubman. *Id.* Sedgwick's letter explained that Dr. Mardy-Davis concluded that the clinical findings did not support Kott's inability to work. AR 590-92. As to Dr. Taubman, Dr. Taubman concluded that, although Kott's plantar fasciitis required that she perform seated-only work between February 10, 2016 and March 1, 2016, no restrictions were indicated thereafter. *Id.* at 346, 591. Sedgwick explained its conclusion that, "[f]rom a podiatry and pain medicine perspective . . . the medical documentation contained no substantive physical clinical findings or abnormalities to support [Kott's] inability to perform any occupation as of

11

February 10, 2016." *Id.* at 591. Although these physicians acknowledged that Kott suffered from medical ailments, they concluded that these ailments did not render Kott unable to perform any occupation. Accordingly, Drs. Mardy-Davis and Taubman agreed that Kott was not disabled under the Plan's "any occupation" standard. *Id.* at 338-41, 343-47, 365-368, 590-92; *see also* AR 314-17 (Dr. Klingbeil's report). Kott attacks these doctors' reports because Sedgwick's letter represented that the report relied on a call with Dr. Justin Low, one of Kott's treating physicians, where Dr. Mardy-Davis states that Dr. Low stated he had little information because he had only provided an injection. Kott claims that the call or attempt to call never occurred. Pl.'s Mot. 6, 7. However, the telephone conversation, whether or not it occurred,[3] did not form the sole basis for the opinions of Drs. Mardy-Davis and Taubman as other reliable evidence supports the denial of the claim. Kott also fails to explain how the ultimate conclusion that Kott could return to work without restrictions after the period of February 10, 2016 and March 1, 2016 was an abuse of discretion.

The opinions of another doctor, Dr. Madireddi, further support the finding that Kott could return to full time work with accommodation after certain time period. AR 314-17; 332-36; 338-41, and 343-47. Specifically, Dr. Madireddi opined in October 2015 that Kott could perform part-time work up to 20 hours per week without accommodation, and that she could return to full-time work at her occupation within six months with accommodation. AR 157. Dr. Madireddi thus estimated that Kott could return to full-time work before or by April 2016. *See id.* at 152 (report with a date of examination on October 5, 2015).

Kott disputes that the opinions of Dr. Madireddi are sound, claiming that the report did not take into account her plantar fasciitis. AR 157; Pl.'s Mot. 10, ECF 19. Relatedly, Kott also contends Dr. Taubman's finding that Kott can perform "seated duties" conflicts with the opinions of Dr. Madireddi. AR 580; Pl.'s Mot. 16.

Even assuming that the reports of these doctors might be lacking in some respects,

---

[3] The Court agrees with Kott that Dr. Mardy-Davis' reference to a call to Dr. Low must be an error because the statement attributed to Dr. Low is completely inconsistent with the record of Dr. Low's treatment of Kott. The Court has reviewed the denial letter with this in mind.

12

Sedgwick's reliance on their overall opinions that Kott was not disabled under the "any occupation" standard is not "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Salomaa*, 642 F.3d at 676. Among all the doctors' reports in the record, the statements from her treating physician, Dr. Justin Low, is the most salient and demonstrate how the reports and examinations conducted by other doctors are consistent with his opinions. Dr. Justin Low was Kott's treating physician and treated Kott at least once a month during the relevant time period. AR 151. In a statement dated November 23, 2015, Dr. Low opined that he expected a "fundamental or marked change" in the future, and expected that Kott would recover sufficiently to perform her duties in three to six months. *Id.* at 152. In other words, Dr. Low was of the opinion that Kott would be able to perform her duties as early as February 23, 2016 or as late as May 23, 2016. This is consistent with the conclusion of Dr. Taubman that Kott could return to work without restrictions after the period of February 10, 2016 and March 1, 2016 and also consistent with the opinion of Dr. Madireddi that Kott could return to full-time work before or by April 2016. Based on Dr. Low's opinions in combination with other doctors' reports and examinations, it is not "illogical, implausible, or without support in inferences" that may be drawn from the record for Sedgwick to conclude that Kott was not disabled under the "any occupation" standard.

Based on the doctors' opinions that Kott could return to work within a few months, and as early as February 23, 2016, in accordance with Dr. Low's opinions, the Court concludes that Defendant did not abuse its discretion when it denied Kott's disability claim. *See Cuevas*, 2016 WL 2754434, at *9 (finding that an administrator did not abuse its discretion in denying a disability claim where it provided the claimant with a recitation of plan language, acknowledgement of specific arguments made in the claimant's appeal, a reasonable basis for the denial, and an explanation for its conclusion).

The parties further dispute whether Kott's ability to work part-time precludes her entitlement to benefits under the "any occupation" standard. Although Kott acknowledges that she can work part-time, albeit with certain restrictions, she contends that she should still be considered disabled under the "any occupation" standard. *E.g.*, Mot. 2, 5-6. Kott further contends that

13

Defendant's interpretation of total disability under the "any occupation" standard to preclude any participant with the ability to work part-time is erroneous. Reply 4-5. Defendant argues that inability to perform full-time work is not determinative of whether the Plan participant is totally disabled. Opp'n 13. According to Defendant, if the participant can work part-time and with certain restrictions, he would not be considered to be "continuously unable to perform any occupation," and would not qualify for benefits under the "any occupation" standard. *Id.* at 14-15 (citing *Graeber v. Hewlett Packard Co. Employee Benefits Org. Income Prot. Plan*, 421 F. Supp. 2d 1246, 1249 (N.D. Cal. 2006)). Defendant then concludes that Kott is not totally disabled under the "any occupation" standard because she could work part-time. Opp'n 16.

The *Graeber* court considered this issue and concluded that a claimant capable of working 20 hours per week is not unable to work in "any occupation" and thus not entitled to disability benefits beyond the "own occupation" benefit. *Graeber*, 421 F. Supp. 2d at 1254–55. In construing language nearly identical to the language at issue here, the court reasoned that language requiring a claimant to be unable to work at any occupation means that a claimant "must not be able to work at all, not even part time." *Id.* at 1254. *Graeber* expressly rejected the argument that disability eligibility turns on the ability to perform full-time work: "The Court rejects plaintiff's assertion that a Plan Member is entitled to long-term disability benefits unless [s]he can work full time in any occupation. Plaintiff's argument is belied by the plain meaning of the 'any occupation' standard and the case law." *Id.* at 1256; *see also Shane v. Albertson's Inc. Employees' Disability Plan*, 381 F. Supp. 2d 1196, 1206 (C.D. Cal. 2005) (finding that employee who could work part time was not totally disabled).

The Ninth Circuit has not addressed the part-time issue beyond Judge Robart's unpublished dissent in *Moore v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 282 Fed. Appx. 599, 604 (9th Cir. 2008), in which Judge Robart concluded that a claimant is not entitled to "any occupation" benefits if she can perform part-time work. While the Ninth Circuit has not finally decided the issue, most if not all other circuits are in accord. *E.g.*, *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1067-68 (6th Cir. 2014) ("It is reasonable to conclude that an ability to do some work means one is not unable to do 'any work.'"); *Cooper v. Hewlett-Packard*

14

*Co.*, 592 F.3d 645, 655–57 (5th Cir. 2009) (finding the fact that the plaintiff was working part time supported a determination that she was not unable to perform "any occupation"); *Brigham v. Sun Life Can.*, 317 F.3d 72, 83-84 (1st Cir. 2003) (holding that paraplegic was not "totally disabled, i.e., physically unable to work on even a part-time basis"); *Bond v. Cerner Corp.*, 309 F.3d 1064, 1067–68 (8th Cir. 2002) (recognizing that "total disability" precluded a claimant who was able to work part time); *Ladd v. ITT Corp.*, 148 F.3d 753,754 (7th Cir. 1998) (claimant who was able to work part-time not totally disabled under policy requiring her to be "unable to engage in any and every duty pertaining to any occupation or employment for wage for which you are qualified").

Regardless, the Court need not reach the part-time work issue in this case because there is evidence in the record showing that Kott could return to full-time work as early as February 2016.[4] Such evidence includes not only opinions of the peer review doctors but also those of Kott's treating physician, Dr. Low, as discussed above. As such, the Court finds that the denial of benefits was not an abuse of discretion.

Based on these findings of fact and conclusions of law, made pursuant to Rule 52(a)(1), Kott is not entitled to disability benefits under the Plan. Judgment shall be entered in favor of Defendant Agilent Technologies, Inc. Disability Plan, and against Kott.

## V. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendant's Rule 52 motion is GRANTED; and
2. Kott's Rule 52 motion is DENIED.

Dated: July 7, 2017

_____
BETH LABSON FREEMAN
United States District Judge

---

[4] The Court further notes that Kott thought she only had to prove that she could not work full time to qualify for disability under the "any occupation standard." Sedgwick's initial denial letter and subsequent appeal denial letter do not anywhere suggest that the phrase "any occupation" was understood to include working a half-time schedule with accommodated job duties. Nonetheless, Sedgwick's denial of benefit relied on the fact that Kott could perform her regular occupation at least as of February 2016, based on Drs. Mardy-Davis and Dr. Taubman's opinions. AR 340, 363.

15